UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| PEYMAN FAZELI, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-749-B |
| | § | |
| REZA SALEH, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The Court entered a Conditional Order of Default Judgment under Federal Rules of Civil Procedure 37(b) and 55 against Defendant Reza Saleh on August 2, 2018, and requested that Plaintiff brief the Court on several issues addressed below. *See* Doc. 83. Before the Court is Plaintiff Peyman Fazeli's Brief in Support of Final Default Judgment Against Defendant. Doc. 87. For the reasons discussed below, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant. Furthermore, the Court **GRANTS in part** and **DENIES in part** Plaintiff's request for damages.

### I.
### BACKGROUND

On March 17, 2016, Plaintiff filed this case alleging multiple Fair Labor Standards Act (FLSA) violations against Defendant Reza Saleh. *See* Doc. 1, Pl.'s Original Compl., ¶ 3. Plaintiff stated that he had been employed as a valet driver by Defendant's valet service for the three years prior to this lawsuit, up until approximately June 15, 2015. Doc. 46, Pl.'s Second Am. Compl., ¶ 17.

During his employment, Defendant applied a tip credit towards Plaintiff's minimum wage but prevented Plaintiff from keeping all the tips he received by allegedly requiring a portion of tips be paid to management. *Id.* ¶¶ 19–20. Also, Plaintiff alleged that Defendant deducted an estimated $2,000.00 from Plaintiff's wages to cover the cost of repairs to a vehicle that was damaged during the course of Plaintiff's valet duties. Doc. 87-2, Fazeli Decl., ¶ 9. Further, Plaintiff stated that he worked in excess of forty hours during "weeks covered by this lawsuit" but never received overtime pay from Defendant. Doc. 46, Pl.'s Second Am. Compl., ¶ 21. Thus, Plaintiff claimed that Defendant willfully failed to employ a proper tip pool, failed to pay lawful minimum wages, and failed to pay lawful overtime wages—all in violation of the FLSA. *Id.* ¶ 3.

Defendant has failed to cooperate at almost every stage of this case. On April 30, 2018, Plaintiff filed a Notice Regarding Mediation (Doc. 63) explaining that because defense counsel "has been unable to reach his client, Reza Saleh, for multiple months" no mediation had occurred by the court-ordered deadline. Doc. 63, Pl.'s Notice Regarding Mediation, 1. In response, defense counsel confirmed that Defendant had stopped all communications with the attorney. Doc. 65, Joint Status Report, 2. Due to Defendant's unresponsiveness, defense counsel filed a Motion to Withdraw (Doc. 68) which the Court granted on June 11, 2018 (Doc. 69). Since then, Defendant has repeatedly indicated both with his actions and in communications with the Court that he does not plan to defend the case:

- <u>June 15, 2018:</u> Defendant responded to the Court's Order directing Defendant to advise whether he intended to continue litigating this case by stating that he had no financial means or energy to hire an attorney. Doc. 70, Def.'s Resp.
- <u>July 12, 2018:</u> The parties' designated mediator filed a Notice in which she stated that the parties failed to mediate by the Court-ordered deadline because "Defendant, Reza Saleh, has informed us that he is not in position to

- pay for mediation." Doc. 78, Corrected Notice of Mediation Status.
- <u>July 18, 2018:</u> Defendant emailed the court and stated, "I have no financial means to hire an attorney or even do mediation and have no intention [of] respond[ing] to these people." Email from Reza Saleh to Boyle Orders (July 18, 2018, 4:03 p.m. CST).
- <u>August 1, 2018:</u> Defendant failed to appear at a hearing held by Magistrate Judge Rebecca Rutherford regarding Plaintiff's Motion to Compel Discovery Responses. Doc. 81, Minute Entry.

Following these events, on August 2, 2017, the Court entered a conditional Order of Default Judgement against Defendant under Federal Rule of Civil Procedure 37(b). *See* Doc. 83. In the Order, Plaintiff was directed to submit briefing that included: (1) why default judgment is appropriate under the circumstances; (2) whether there is sufficient basis in the pleadings for judgment; and (3) evidence concerning damages and attorney's fees. *Id.* at 3. Plaintiff filed his Brief in Support of Final Default Judgment on September 4, 2018. Doc. 87. Again, the Defendant failed to respond. Plaintiff's motion is therefore ripe for review.

## II.

## LEGAL STANDARDS

Federal Rules of Civil Procedure 37(b) and 55 are pertinent to default judgment in circumstances like those of this case. "Rule 37(b)(2)(c) authorizes a district court to strike pleadings of and enter a default judgment against a party that fails to comply with a discovery order." *U.S. For Use of M–CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1013 (5th Cir. 1987). However, "[a] default judgment or dismissal under Rule 37(b) requires a clear record of delay or contumacious conduct." *Compass Bank v. Villarreal*, 2011 WL 1740270, at *5 (S.D. Tex. May 5, 2011). Thus, before granting a default judgment for failure to comply with discovery orders under Rule 37(b), the Fifth Circuit considers the following four factors:

> (1) whether the violation was willful or in bad faith rather than simply due to inability to comply, (2) whether less drastic sanctions would effect the goals of Rule 37(b), (3) whether the violation prejudiced the opposing party's trial preparation, and (4) whether the client knew of or participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.

*Shipco*, 814 F.2d at 1013. When the four factors of Rule 37(b) are met, the court may enter default judgment against the defendant under Rule 55. Fed. R. Civ. P. 55(b)(2); *see Compass Bank*, 2011 WL 1740270, at *5.

Rule 55 authorizes an entry of default judgment when a properly noticed party fails to appear in a case, appears but fails to file a pleading, or "fail[s] to . . . otherwise defend" the lawsuit. Fed. R. Civ. P. 55(a). In any of these scenarios, the claimant "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). Whether to issue default judgment is "committed to the discretion of the district judge." *Lewis*, 236 F.3d at 767 (quoting *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)). "[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Default judgments are typically appropriate only when a party has abandoned the case and "the adversary process has been halted because of [the] essentially unresponsive party." *Sun Bank of Ocala*, 874 F.2d at 276 (citations omitted). In considering a motion for default judgment, a court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

# III.

# ANALYSIS

*A.     Whether Default Judgment is Appropriate*

In deciding whether default judgment is appropriate, the Court considers the four factors outlined in *Shipco*. Applying them to this case, the Court finds they weigh in favor of default.

First, although Defendant stated that he does not have the financial means to hire a new attorney, his inability to pay for counsel does not prevent the Court from finding his violations "willful . . . rather than simply due to inability to comply." *See King v. Galluzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004) (court found on motion to set aside default judgment that defendants' default was willful despite defendants' inability to pay for legal counsel) (citing *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 823 (2d Cir. 1967) ("If a party lacks funds it is not given to him to decide ex parte that he is justified in not prosecuting his suit and is thus free to ignore the rules of the courts.")); *see also* Doc. 70, Def.'s Resp., 1 (Defendant confirmed receiving the Court's June 11, 2018 Order, which granted defense counsel's Motion to Withdraw and informed Defendant that unless new counsel was hired he would be proceeding pro se). Since the time Defendant chose to proceed pro se, he has been "willfully" unresponsive: Defendant failed to respond to Plaintiff's discovery requests (Doc. 72-1, Pl.'s First Set Interrogs.), Defendant failed to appear at a hearing held by Magistrate Judge Rebecca Rutherford regarding Plaintiff's Motion to Compel Discovery (Doc. 81, Minute Entry), and Defendant failed to respond to the Order on Plaintiff's Motion to Compel Discovery Responses (Doc. 82). Even outside the discovery context, Defendant has also failed to respond to Plaintiff's Second Amended Complaint (Doc. 46), the Conditional Order of Default Judgment against Defendant (Doc. 83), and Plaintiff's Brief in Support of Final Default Judgment

Against Defendant (Doc. 87). Indeed, Defendant has explicitly indicated to the Court that he has no intention of responding to Plaintiff's claims. Email from Reza Saleh to Boyle Orders (July 18, 2018, 4:03 p.m. CST).

Second, a less drastic sanction cannot achieve the goals of Rule 37(b). Rule 37(b) provides seven possible sanctions:

> (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part; (6) rendering a default judgment against the disobedient party; or (7) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i–vii). Since Defendant is defending this action against Plaintiff, striking the pleadings, staying further proceedings, or dismissing the action would be inappropriate, Considering the other available sanctions, and in light of Defendant's "deliberately obstructive conduct," default judgment is the foreseeable and appropriate response required to effect the goals of Rule 37(b). See Jones v. La. State Bar Ass'n, 602 F.2d 94, 97 (5th Cir. 1979) (finding that default judgment was appropriate when the district court was faced with a defendant's "repeated refusal to comply with a valid order").

Third, Defendant's violations prejudiced the opposing party's trial preparation. Litigation of Plaintiff's claim against Defendant—which has been ongoing since March of 2016—has been halted by Defendant's refusal to participate in the case. Defendant failed to respond to Plaintiff's requests for interrogatories. See Doc. 72-1, Pl.'s First Set Interrogs. Defendant subsequently failed to appear at a hearing held by Magistrate Judge Rebecca Rutherford regarding Plaintiff's motion to compel

discovery requests (Doc. 81, Minute Entry) and also failed to respond to the Order on Plaintiff's Motion to Compel Discovery Responses (Doc. 82). As a result, Plaintiff's ability to prepare for trial was substantially prejudiced. *See Compass Bank*, 2011 WL 1740270, at *6 (holding that a defendant's failure to cooperate with the scheduling of a deposition and failure to respond to request for written discovery substantially prejudiced the plaintiff's ability to prepare for trial).

Fourth, Defendant knowingly participated in the violation of the discovery request. This is evidenced by Defendant's explicit indication to the Court that he has no intention of responding to Plaintiff's claims. *See* Email from Reza Saleh to Boyle Orders (July 18, 2018, 4:03 p.m. CST) (Defendant stating, "I have no financial means to hire an attorney or even do mediation and have no intention [of] respond[ing] to these people."). Furthermore, there is no evidence before the court to indicate that Defendant intends to litigate this case and participate in the judicial process. Therefore, the Court concludes that default judgment is proper.

B.      *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to his default, Defendant is deemed to have admitted the allegations set forth in the Amended Complaint. Nonetheless, the Court must review the pleadings to determine whether Plaintiff can establish a viable claim for unpaid wages under the FLSA. *See Nishimatsu*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). Based on the following pleadings, the Court finds that Plaintiff has established a viable claim for relief under the FLSA.

First, Plaintiff alleges that Defendant "knowingly, willfully, or with reckless disregard" required Plaintiff to "pay a portion of his tips received each shift to management . . . in violation of requirements for legal tip pools." Doc. 46, Pl.'s Second Am. Compl., ¶¶ 20, 26–27 (citing 29 U.S.C.

§ 203(m) of the FLSA, which states that an "employer may not keep tips received by its employees for any purposes"). Additionally, Defendant allegedly failed to pay Plaintiff overtime wages after "Plaintiff was required to work in excess of 40 hours during weeks covered by this lawsuit" in violation of § 207(a)(1) of the FLSA, which dictates that no employer shall employ his employees for a workweek longer than forty hours "unless such employee receives compensation for his [overtime hours] at a rate not less than one and one-half times the regular rate at which he is employed." Doc. 46, Pl.'s Second Am. Compl., ¶ 21; 29 U.S.C. § 207(a)(1). Furthermore, Defendant allegedly deducted an estimated $2,000.00 to cover the cost of repairs for a vehicle that was damaged while Plaintiff was on the job in violation of 29 U.S.C. § 206. *See* Doc. 87-2, Fazeli Decl., ¶ 9.

Having reviewed Plaintiff's factual allegations, (Doc. 87, Br. Supp. Final Default J., 10–13), which the Court accepts as true based on Defendant's default, the Court finds that these allegations establish violations of the FLSA. *See Nishimatsu Constr.*, 515 F.2d at 1206. Consequently, the Court finds that there is a sufficient basis for judgment on Plaintiff's pleading.

C.   *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Plaintiff requests unpaid wages and liquidated damages under the FLSA. In addition, he requests attorney's fees and costs. The Court considers each of these requests in turn.

1. Unpaid Wages

    *a.     Unpaid Minimum Wages*

As of May 25, 2009, the federal minimum wage rate is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Because Defendant failed to utilize a proper tip-credit, Plaintiff claims he is owed $23,961.60 in unpaid minimum wages from March 17, 2013, through June 15, 2015. Doc. 87-2, Fazeli Decl., Table 1. Plaintiff arrives at this figure by multiplying the average minimum number of hours he worked each week (40) by his total weeks of employment (117) by the difference between the rate of minimum wage and the reduced rate he was paid under the tip-credit provision ($5.12). *Id.* The Court finds Plaintiff's request problematic because Plaintiff provides nothing other than his own terse declaration to support his request. There are no time sheets, pay stubs, work logs, or other evidence to substantiate the length of his employment, his hourly rate, or the hours he worked. Though the Court accepts as true the allegations that Plaintiff makes with respect to his underlying claim, it is nonetheless reluctant to grant Plaintiff's request for damages absent any supporting documents. *C.f. Bullion v. Transtec Sys., Inc*, 2008 WL 4218119, at *2 (S.D. Fla. Sept. 15, 2008) (plaintiff "submitted detailed affidavit to establish claimed damages"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 15 (D.D.C. July 3, 2013) (plaintiff provided employment contract, prevailing wage determination policy guidance from Employment and Training Administration, prevailing wage rates for housekeepers in area, and weekly tabulation of hours she worked to support her claims). In light of these deficiencies and the Fifth Circuit's disinclination to award damages absent a hearing or detailed affidavits establishing the necessary facts, the Court denies Plaintiff's request for $23,961.60

in unpaid minimum wages.

### b. *Unpaid Overtime* Wages

The FLSA generally requires an employee to pay overtime compensation (at a rate of one and one-half times the regular rate of pay) to an employee after he has worked over forty hours in one week. 29 U.S.C. § 207(a). Plaintiff claims he is owed $16,407.04 in unpaid overtime wages from March 17, 2013, through June 15, 2015. Doc. 87, Fazeli Decl., Table 1. He arrives at this figure by multiplying the average number of overtime hours he worked each week (20 hours per week the first 65 weeks, 4 hours per week the last 52 weeks) by his total weeks of employment (65 weeks at 20 hours overtime, 52 weeks at 4 hours overtime) by his overtime rate ($10.88). *Id.* Similarly to the request for unpaid minimum wages, the Court finds Plaintiff's request problematic because Plaintiff provides nothing but his declaration to support his request. Though the Court accepts as true the allegations that Plaintiff makes with respect to his underlying claim, it is nonetheless reluctant to grant Plaintiff's request for damages absent any supporting documents. *C.f. Gibbs v. Parr Mgmt., LLC*, 2013 WL 2355048, at *1 (N.D. Tex. May 29, 2013) (plaintiff provided affidavit listing dates and work hours to support overtime claim); *Bell v. Able Sec. & Investigations, Inc.*, 2011 WL 2550846, at *1 (N.D. Tex. June 28, 2011) (plaintiff provided timekeeping records to support overtime claim). Thus, the Court denies Plaintiff's request for $16,407.04 in unpaid overtime wages.

### c. *Improper Payroll Deduction*

The FLSA mandates an unconditional minimum wage that an employer cannot alter. 29 U.S.C. § 206. The Fifth Circuit has held that "payroll deductions to compensate for debts owed by an employee to his employer were impermissible if they operated to reduce income below the wage floor prescribed by the FLSA." *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974), *overruled on other*

*grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130–31 (1988) (citing *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369–70 (5th Cir. 1973) (holding that an employer's deductions from an employee's paycheck to cover the cost of destruction to the employer's truck were impermissible because they reduced the employee's net wage below the statutory minimum)). Plaintiff claims he is owed $2,000.00 for improper payroll deductions for the cost of repairs to a vehicle that was damaged during the course of his valet duties in February of 2013. Doc. 87-2, Fazeli Decl., ¶ 9. However, Plaintiff's request is problematic because Plaintiff provides nothing but his declaration to support his request. Plaintiff does not include pay stubs or other evidence of the deductions. Though the Court accepts as true the allegations that Plaintiff makes with respect to his underlying claim, it is nonetheless reluctant to grant Plaintiff's request for damages absent any supporting documents. Thus, the Court denies Plaintiff's request for $2,000.00 in improper payroll deductions.

2. <u>Liquidated Damages</u>

Next, the Court considers Plaintiff's request for liquidated damages. A plaintiff is entitled to liquidated damages equal to the amount of unpaid wages for willful violations of the FLSA. 29 U.S.C. § 216(b). "Under the FLSA, a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). Plaintiff allegedly complained to Defendant because he "did not think [the tips paid to management] were fair." Doc. 87-2, Fazeli Decl., ¶ 4. Plaintiff alleged that Defendant "ignored [his] complaints, explaining that the management fee system 'was just the way the company operated.' Defendant made it clear that [Plaintiff] either went along with 'the way the company

operated,' or [Defendant] would find another worker who would." *Id.* Plaintiff claimed that Defendant ultimately did not make any changes based on his complaint. *Id.* Accepting the allegations that Plaintiff makes with respect to his underlying claim as true and finding that Defendant has failed to respond to Plaintiff's Second Amended Complaint (Doc. 46), the conditional Order of Default Judgment against Defendant (Doc. 83), and Plaintiff's Brief in Support of Final Default Judgment Against Defendant (Doc. 87), Defendant has failed to sustain his burden of showing good faith. Consequently, the Court finds that Plaintiff may be entitled to liquidated damages. However, given the deficiency in supporting documents for unpaid wages discussed above, the Court denies Plaintiff's request for $40,368.64 in liquidated damages.

3.  Attorney's Fees and Costs

Finally, the Court considers Plaintiff's request for attorney's fees and costs. "The FLSA authorizes a prevailing party in an FLSA proceeding to recover costs and attorney's fees, and the award of attorney's fees . . . is mandatory." *Bell*, 2011 WL 2550846, at *3; *see* 29 U.S.C. § 216(b). Plaintiff seeks $14,783.30 in attorney's fees and $500.00 in costs. In support of this request, Plaintiff submits the declaration of his attorney, Travis Gasper (Doc. 87-5, Gasper Decl.), as well as the billing records of his law firm, Lee & Braziel, LLP (Doc. 87-6, Time Entries). These detail the charges and expenses incurred during this litigation.

*a. Attorney's fees*

The Fifth Circuit has described the basic procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the

> community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 Fed. App'x 116, 124 (quoting *Jimenez v. Wood Cty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. Accordingly, the Court will apply the lodestar method and make adjustments, if necessary, with respect to the *Johnson* factors.

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by Plaintiff's attorneys on the lawsuit, as well as the reasonable hourly rate for the attorneys involved. *Smith*, 478 Fed. App'x at 124; *Williams v. Kaufman Cnty.*, 2003 WL 21755913, at *5 (N.D. Tex. July 30, 2003). Here, Plaintiff's attorney, Gasper, has provided a time sheet indicating the amount of work performed in the case. Doc. 87-6, Time Entries. Attorney Jesse Forester performed 20.4 hours of work at a rate of $275.00 per hour; Attorney Travis Gasper performed 34.23 hours of work at a rate of $250.00 per hour; Paralegal Jonathan Muriel performed 0.71 hours of work at a rate of $110.00 per hour; Paralegal Eli Rodriguez performed 0.7 hours of work at a rate of $95.00 per hour; and Law Clerk Ryan Grant performed 4.96 hours of work at a rate of $95.00 per hour. *Id.*

After reviewing Gasper's declaration as well as his supporting invoice, the Court finds that the time expended by Gasper, Forester, their paralegals, and their law clerk was reasonable. Nothing indicates that any individual was billing for "excessive, duplicative, or inadequately documented" time. *See Smith*, 478 Fed. App'x at 124. Consequently, the Court accepts these hours as part of its lodestar calculation.

With respect to the hourly rates, the Court also finds the amounts were reasonable. Gasper avers that his rate is in line with the range of fees customarily charged in the Dallas, Texas, area by lawyers with similar experience and expertise. Doc. 87-5, Gasper Decl., ¶ 4. In light of his declaration, as well as the Court's own knowledge of rates charged for legal services by attorneys in the area with similar levels of skill, experience, and competence, the Court is comfortable using his hourly rate of $250.00. The Court is similarly comfortable using the rate of $275.00 per hour for Forester, as well as the rates indicated for their paralegals and law clerk.

Accordingly, the Court finds the attorney's fees to be: (1) $5,610.00 for the attorney Forester (20.4 hours x $275.00); (2) $8,557.50 for the attorney Gasper (34.23 hours x $250.00); (3) $78.10 for Muriel, the paralegal (.71 hours x $110.00); (4) $66.50 for Rodriguez, the paralegal (.7 hours x $95.00); and (5) $471.20 for Grant, the law clerk (4.96 hours x $95.00). Considering the twelve *Johnson* factors described above, the Court does not think it necessary to make any adjustment to these figures. Accordingly, Plaintiff's motion for attorney's fees is granted in the amount of $14,783.30.

        b.      *Costs*

Lastly, the Court considers the Plaintiff's request for costs. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides

otherwise. Fed. R. Civ. P. 54(d)(1). In addition, pursuant to § 216(b) of the FLSA, the court *may* allow costs to be paid by defendant. 29 U.S.C. § 216(b). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. Here, Plaintiff seeks $500 in costs, namely the filing fee ($400.00) and the service of process fees ($100.00). These are both reasonable and taxable under the law. *See Bullion*, 2008 WL 4218119, at *4 n. 4. Therefore, the Court grants Plaintiff's request for costs in the amount of $500.00.

## IV.

## CONCLUSION

For the above-stated reasons, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant. Further, the Court **GRANTS in part** and **DENIES in part** Plaintiff's request for damages. Specifically, the Court **GRANTS** Plaintiff's request for attorney's fees in the amount of $14,783.30, and Plaintiff's request for costs in the amount of $500.00. However, the Court **DENIES without prejudice** Plaintiff's request for unpaid wages and liquidated damages in the amount of $82,737.28. The Court **ORDERS** Plaintiff to supplement the record as addressed above no later than **October 20, 2018.** Plaintiff should include along with his supplemental briefing any and all time sheets, pay stubs, work logs, or other evidence that he may have to substantiate the length of his employment, hourly rates, hours he worked, proof of deductions, or provide an affidavit explaining why he is unable to supply the requested documents. Failure to comply with any of these requirements may result in Plaintiff's lawsuit being dismissed without prejudice.

SO ORDERED.

SIGNED: September 21, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE